## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JENIKE ALLEN, et al.,** | : | **CASE NO: 1:22-cv-00358** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **JUDGE MICHAEL R. BARRETT** |
| **vs.** | : | |
| | : | **PLAINTIFF'S UNOPPOSED** |
| **ANGEL'S CARE FAMILY HOME,** | : | **MOTION FOR APPROVAL OF** |
| **INC., et al.** | : | **FLSA COLLECTIVE ACTION** |
| | : | **SETTLEMENT AND FOR** |
| **Defendants.** | : | **ATTORNEYS' FEES AND COSTS** |

Plaintiff Jenike Allen, through her undersigned counsel, respectfully moves this Court for an Order:

1.      Granting final approval of the parties' settlement agreement as a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act ("FLSA").  The settlement agreement is attached hereto as Exhibit A.

2.      Approving the gross settlement amount of $17,400 to Jenike Allen and $7,581.36 to Austin Dunn, the only members of the collective to opt-in, in resolution of this action.

3.      Approving plaintiff's unopposed request for attorneys' fees in the amount of $17,220.50 and reasonable costs of $441.89.

4.      Dismissing this action with prejudice and entering final judgment.

5.      Reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the settlement agreement and this Order.

This Motion is based on the accompanying Memorandum of Law, the Declaration of Robb S. Stokar (Exhibit B), and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the settlement agreement, defendants do not oppose this Motion.

A proposed Order granting the Motion is submitted for the Court's consideration as Exhibit C.

Respectfully submitted,

**STOKAR LAW, LLC**

*/s/ Robb S. Stokar*
Robb S. Stokar (0091330)
404 E. 12th St.
First Floor
Cincinnati, OH 45202
T: 513-500-8511
rss@stokarlaw.com
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JENIKE ALLEN, et al.,** | : | **CASE NO: 1:22-cv-00358** |
| | : | |
| **Plaintiffs,** | : | **JUDGE MICHAEL R. BARRETT** |
| | : | |
| **vs.** | : | **PLAINTIFF'S MEMORANDUM IN** |
| | : | **SUPPORT OF HER UNOPPOSED** |
| **ANGEL'S CARE FAMILY HOME,** | : | **MOTION FOR APPROVAL OF** |
| **INC., et al.** | : | **FLSA COLLECTIVE ACTION** |
| | : | **SETTLEMENT AND FOR** |
| **Defendants.** | : | **ATTORNEYS' FEES AND COSTS** |

## I.  INTRODUCTION

Plaintiff Jenike Allen, through her counsel, moves for approval of the parties' settlement. Because this settlement resolves claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), this Court need only apply a one-step approval process.  This settlement is a fair and reasonable resolution of a *bona fide* dispute.  Accordingly, plaintiff respectfully requests that the Court issue an Order:

> (1) Approving the gross settlement amount of $17,400 to Jenike Allen and $7,581.36 to Austin Dunn, the only members of the collective to opt-in, in resolution of this action;

> (2) Approving plaintiff's unopposed request for attorneys' fees in the amount of $17,220.50 and reasonable costs of $441.89; and

> (3) dismissing this case with prejudice.

## II.  FACTUAL BACKGROUND

Plaintiff Allen and opt-in member Dunn worked for defendants as caregivers at their residential care facilities.  On June 21, 2022, plaintiff Allen filed a Class Action Complaint alleging defendants violated the Fair Labor Standards Act and analogous Ohio law in their underpayment

of overtime.  (ECF No. 1).

The genesis of the complaint is that, in 2021, Angel's Care Family Home, Inc. ("Angel's Care") entered into agreements with a select number of caregivers whereby Angel's Care agreed to increase the caregivers' hourly rate and to pay the caregivers straight time—at the new, higher hourly rate—up to a certain agreed-upon hourly threshold (in Plaintiff's case, 60 hours per week). Angel's Care then paid these caregivers overtime for hours above this agreed-upon hourly threshold at 1.5 times their new, higher hourly rate.(ECF No. 1, PAGEID #4).

As this policy was effectuated during the height of the COVID-19 pandemic, when workers were in short supply and resident needs at Angel's Care were many, plaintiff Allen and opt-in member Dunn often worked in excess of sixty (60) hours per workweek, at times working more than eighty (80) hours per workweek.

On October 18, 2022, this Court granted Conditional Certification and authorized Judicial Notice to the potential opt-in class members.  (ECF No. 10).  Plaintiff's counsel was then provided with the names and addresses of potential class members, who were sent notice via regular U.S. mail.  As detailed in the January 9, 2023 Notice to the Court, the response rate was rather low.  Of the fourteen (14) notices sent out, three (3) were returned undeliverable and Mr. Dunn was the only individual to complete his opt-in form.  (ECF No. 11, 11-1).

Shortly thereafter, defendants' counsel produced the payroll reports for Allen and Dunn and the parties engaged in complex calculations in order to determine the underpayment.  Such complexity was present based upon Angel's Care's bookkeeping system, which utilized special coding to deal with certain tax offsets available to businesses during the COVID-19 pandemic.

 Eventually, prolonged and spirited negotiations ensued between counsel for plaintiff and counsel for defendants, including positing different theories of liability and defense.  After the

attorneys reached agreement on the settlement for the plaintiffs, they discussed attorneys' fees and costs. Based on hourly rate awards previously awarded to plaintiff's counsel, the parties reached agreement on the attorneys' fees and costs portion of the settlement.

The complete terms of the parties' proposed settlement are set forth in Exhibit A.

## III. THE TERMS OF THE SETTLEMENT AGREEMENT

### A. The FLSA Collective Members

The settlement agreement provides that the FLSA Collective Members include plaintiff Allen and opt-in plaintiff Dunn. A copy of the settlement agreement for the Court's review and approval is attached hereto as Exhibit A.

On October 18, 2022, this Court granted Plaintiff's Motion for Conditional Certification. (ECF No. 10). The Court's Order certified the following collective:

> All Caregivers who were paid straight time for any hours in excess of forty (40) hours in a workweek from June 21, 2019 to the present.

Plaintiff's Counsel mailed notice to the collective via U.S. First Class Mail and only Mr. Dunn has opted into this case.

### B. The Gross Settlement Amount

Following receipt of Mr. Dunn's opt-in form, defendants' counsel provided data to plaintiff's counsel showing hours worked and amounts paid to Allen and Dunn. (Exhibit B at 16). The parties agreed to a settlement providing a gross cash payment to Allen and Dunn tied directly to the alleged underpayment of overtime to each individual. (Exhibit B at 19)

### C. Calculation And Distribution Of The Gross Settlement Amount

The amounts defendants agreed to pay Allen and Dunn were based on analysis of the hours worked by each individual, the amounts paid by the defendants and negotiation between counsel on the appropriate damage calculations.

The parties have a good faith, *bona fide* dispute about how to calculate the damages attributable to the alternative pay plan.  The plan increased plaintiffs' hourly rate, but provided for some hours above 40 in a workweek to be paid at straight time.  Plaintiffs contend they are owed 1.5 times the increased hourly rate for every hour worked above 40 in a workweek.  Defendants disagree, and contend that damages should be calculated as the difference between (i) what plaintiffs were paid on the alternative pay plan and (ii) what plaintiffs would have been paid had the alternative pay plan not existed (and their rate not been increased).  Because the alternative pay plan increased plaintiffs' hourly rate, there are some weeks plaintiffs were paid more under the alternative pay plan than they would have been if it had not existed, and others where the increase in plaintiffs' hourly rate arguably offsets plaintiffs' damages.

Accordingly, the parties arrived at settlement amounts that considered such an offset but made available to Allen and Dunn the liquidated damages available under 29 U.S.C. § 216(b).  Further, defendants took the position that because Allen and Dunn agreed to the "alternate pay structure," defendants' violation of the FLSA may not be considered willful under 29 U.S.C. § 255(a).

### D.    Attorneys' Fees And Costs

Pursuant to the settlement agreement, plaintiff's counsel requests that this Court approve the agreed upon attorneys' fees of $17,220.50 and reasonable costs of $441.89.  (Exhibit B at 39-40).  This will compensate plaintiff's counsel for all work performed in this lawsuit and costs and expenses incurred, as well as all work remaining to be performed, including, but not limited to securing Court approval of the settlement, making sure that the settlement is fairly administered, and obtaining final dismissal of the lawsuit.

The amounts requested are the actual hours fees of plaintiff's counsel and the out of pocket

expenses advanced by counsel.

### E. Released Claims

Plaintiff and the FLSA Collective Member will release defendants from/for all wage and hour related claims that were or could have been asserted in Plaintiff's Complaint based on the facts alleged and that arose from June 21, 2019 to present. This includes claims under state and federal law for unpaid wages and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. (*See* Exhibit A at ¶¶ 5,6).

Plaintiff Allen will sign a general release, releasing defendants from all liability from June 21, 2019 through the date the agreement is signed and agreeing to dismiss her claims against defendants with prejudice, unless dismissed by order of the Court. *Id.*

## IV. ARGUMENT

### A. The Standard For Settlement Approval Under the FLSA Supports Approval of the Settlement

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA's pay requirements are mandatory and, except in two narrow circumstances, employees' rights under the FLSA are generally not subject to waiver by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). One such circumstance, as here, is when a court reviews and approves a settlement in a private action for back wages. *Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350, 1353 (11th Cir. 1982). In approving an FLSA settlement, the court must ensure that there is a fair and reasonable resolution of a *bona fide* dispute. *Id.* at 1354–55.

In doing so, the court considers several factors:

(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement

will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)).

Courts routinely apply a one-step approval process to FLSA settlements. *See Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *4 (N.D. Ohio May 4, 2018) (citing *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-cv-10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill. Nov. 29, 2016) (stating that "[a] one-step settlement approval process is appropriate in FLSA settlements."). Because FLSA collective action members must affirmatively opt in to the case, approval of FLSA settlements does not implicate the same due process concerns as approval of Rule 23 class action settlements. *See id.*

### 1. The settlement agreement is a compromise of a *bona fide* dispute

The settlement agreement reflects a compromise of a *bona fide* dispute. In the context of an FLSA case, a *bona fide* dispute exists where "both parties face risks if the Court determines the appropriate calculation of overtime pay." *Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 U.S. Dist. LEXIS 13530, at *6 (E.D. Mich. Feb. 1, 2017).

Here, the parties disputed whether plaintiff and the FLSA collective members were properly compensated for all hours worked under the FLSA. Specifically, plaintiff alleges that she was paid less than time and one-half for all hours worked in excess of forty (40) hours per workweek. Defendants argued that plaintiffs agreed to the alternate pay arrangement to receive a higher base wage and, in some cases, plaintiff benefitted by the alternate pay arrangement.

After evaluating the evidence and performing their own investigation of the claims, the

parties agreed that significant risks remain with respect to liability and damages. Plaintiff and the collective member face risk regarding the agreement to the alternative pay structure and, in some weeks, the possibility that they were overpaid. Further, defendants contend that any FLSA violations were not willful, and thus a two-year, rather than three-year, statutory period is applicable.

Although the parties continue to firmly believe in the merits of their respective claims and defenses, given the time, expenses, and risks associated with continued litigation, the parties reached a settlement after extensive arm's length negotiation. They desire to resolve this case by way of a negotiated settlement payment by defendants in exchange for a release of claims by plaintiff and the FLSA collective member. Accordingly, this settlement reflects a compromise of a *bona fide* dispute between plaintiff and defendants.

### 2. The FLSA settlement is fair and reasonable

At the core of *Lynn's Food* is the concept that FLSA settlements must "reflect a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. The settlement agreement here does not represent such overreaching, and an analysis of each of the five factors demonstrates that the settlement is fair and reasonable.

In determining whether a settlement amount is reasonable, "there is a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The settlement in this matter represents a reasonable compromise, given the disputed facts

and legal complexity of the case. Plaintiff's counsel performed detailed calculations of the possible overtime damages of Allen and Dunn. The settlement represents a good faith compromise between the application of the original base wage to the possible damages and the use of the increased base wage in calculating all damages.

The settlement awards represent a fair and reasonable resolution of the dispute and should be approved by this Court. In this matter, the Court need not calculate any potential inequity between Allen and Dunn's portion of the settlement, as each individual's resolution is calculated based on the actual hours worked and amounts previously paid.

The parties agree that the settlement represents a good value given the risks of continued litigation. If litigation continued, the parties would need to engage in substantial written discovery and depositions. Moreover, the parties would have litigated collective action treatment in defendants' eventual motion for decertification and dispositive motions on liability, liquidated damages, and willfulness. The parties thus desire to resolve this case by way of negotiated settlement payment by defendants in exchange for a final judgment and release.

### 3.  Seriousness of the litigation risks

While plaintiff maintains that she and Dunn's wage and hour claims are strong, defendants vigorously dispute liability damages, thus posing serious litigation risks. First, defendants contend that their alternative pay structure was agreed to by employees, not unilaterally imposed. Second, defendants contend that Allen and Dunn, at times, benefitted under the alternative pay structure and would not be entitled to damages in certain weeks. Finally, Defendants contend that any violation was not willful, further shortening the applicable statute of limitations.

Given the risks and delay inherent in litigation, this factor supports approval. *See Ent.*

*Energy Corp. v. Columbia Gas Transm. Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (finding that settlement provided an immediate value to the class and minimized the costs that plaintiffs would incur in moving forward).

### 4. Arm's length bargaining between experienced counsel

Counsel for both parties engaged in lengthy arm's length negotiations over the resolution to this matter. As described earlier, plaintiff's counsel investigated the applicable law and defendants' pay records in determining that this settlement represents good value for Allen and Dunn.

Plaintiff's counsel has extensive experience in Labor and Employment litigation, including wage and hour litigation, as well as class and collective actions. Plaintiff's counsel believes the settlement is fair and reasonable. Therefore, this factor supports settlement approval.

### 5. Possibility of fraud or collusion

This settlement was the result of significant, arm's length negotiations between experienced attorneys who have class action wage and hour litigation experience and knowledge of the legal and factual issues of this case.

There is no evidence of collusion among the parties. As a cost savings matter, counsel for the parties decided to negotiate a resolution between themselves, thereby allowing defendants' available funds to be diverted toward the settlements paid to Allen and Dunn

### A. Plaintiff's Counsel's Requested Award of Attorneys' Fees and Costs Should Be Granted

The FLSA permits plaintiffs to recover their attorneys' fees and costs under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b). The amount of a fee award is within the discretion of the district judge. *Fegley v. Higgins*, 19 F.2d 1126, 1134 (6th Cir. 1994). Where a settlement includes payment of attorneys' fees, the court must assess the reasonableness of the fee. "The FLSA

provides for award of reasonable attorney fees and costs in addition to any judgment awarded to the plaintiff." *Morse v. Complete Wiring Concepts, LLC*, 2018 U.S. Dist. LEXIS 105839 (S.D. Ohio, 2018) (citing See 29 U.S.C. § 216(b)). The general approach to determining a reasonable attorney fee is to first calculate the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Rater v. Rix Energy Servs., LLC*, 2017 U.S. Dist. LEXIS 221328, *5 (S.D. Ohio, Nov. 28, 2017). "There is a strong presumption that the lodestar represents the reasonable fee." *Id.* (citing *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 808 (S.D. Ohio 2007)).

### 1.    The requested fee award is reasonable

The requested attorneys' fee is calculated exclusively on a lodestar basis, without impact upon the settlement awards to Allen and Dunn. Unlike other collective actions that use a *portion of the fund* calculation, Allen and Dunn were able to negotiate settlements as if they had brought these claims on an individual basis. (Exhibit B at 19).

### 2.    Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others

Society's stake in rewarding attorneys who bring collective action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ( ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). Without this lawsuit and settlement, many of these individuals would not have had the resources to pursue their claims or even know they had unpaid overtime claims. Accordingly, this fact supports granting the fee request.

### 3.    Plaintiff's counsel undertook considerable risk in litigating this case on a contingency fee basis

Despite the risks associated with prosecuting this case, including issues related to certification and damages, plaintiff's counsel took this case solely on a contingency fee basis,

advancing all out-of-pocket expenses, and was prepared to make this investment despite the practical uncertainty of a successful outcome. Because this matter settled prior to extensive written discovery, the costs advances were rather low. However, plaintiff's counsel was prepared to expend significantly more money to cover deposition costs, document production costs, and, if necessary, expert witnesses.

Plaintiff's counsel actively litigated this case by performing tasks integral to the successful resolution of this matter, including: (1) investigating the potential claims; (2) drafting the Complaint; (3) meeting with Allen to discuss the claims; (4) preparing and serving Initial Disclosures; (5) briefing conditional certification; (6) sending Notice of the collective action; (7) performing detailed damage calculations and analyzing payroll data; and (8) reviewing the settlement agreement and drafting the instant Motion.. This factor thus weighs in favor of awarding the requested fee.

### 4. The lodestar calculation supports approval

The requested attorney's fee was derived using a straight lodestar analysis. The attorney declaration of Robb S. Stokar details the work involved in litigating this matter. (Exhibit B). These hours were reasonably spent with significant time and effort scrutinizing defendants' payroll data to analyze plaintiff's claims and develop theories of liability and damages.

The hourly rate here is also reasonable considering the complexity of collective action litigation, plaintiff's counsel's extensive experience and the excellent recovery to Allen and Dunn. Each attorney's and staff member's rate is supported by the market and consistent with other rates in this Circuit and nationally. *See, e.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17 (S.D. Ohio Oct. 3, 2018) (concluding that $675 for a senior attorney and between $250 and $400 for additional attorneys were reasonable); *Lowther v. AK Steel*

13

*Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *15-16 (S.D. Ohio Dec. 21, 2012) (concluding that $500 was a reasonable rate for two senior attorneys and rates between $100 and $450 were reasonable for other attorneys and involved staff); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (approving attorney rates ranging from $325 to $650 and paralegal rates from $90 to $215 in complex class action); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386, 386 n.6 (D. Md. 2006) (awarding rates of up to $595 per hour). Thus, the lodestar calculation supports the requested fee award.

Further, plaintiff's counsel's rate falls at the low end of rates awarded in the Southern District of Ohio and was previously awarded to plaintiff's counsel when he was less experienced.

In litigating this case, plaintiff's counsel spent 42.4 hours of attorney time and his legal consultant spent 2.7 hours of time. These hours result in a lodestar of $17,220.50 using rates of $395 per hour for attorney time and $175 per hour of legal consultant time. There is no requested multiplier. Further, plaintiff's counsel, representing a compromise, is not asking for any attorney time after May 5, 2023, the date of the agreed upon amount of attorneys' fees. (Exhibit B at 31).

Additionally, an evaluation of the complexity and duration of this case supports the requested fee. Plaintiff and defendants agree that there are numerous disputed issues of fact and law, including whether the alternative pay plan was lawful, the actual damages incurred by Allen and Dunn; and whether class and collective action treatment could be maintained. Because defendants had potential legal and factual defenses to plaintiff's claims, a verdict for defendants was possible.

As all parties recognize both trial and judicial review are unpredictable and could adversely affect the scope of an ultimate recovery, if not the recovery itself, the award is reasonable. Plaintiff's counsel accepted these risks, diligently prosecuted the case, and negotiated a

beneficial recovery for Allen and Dunn that represents a significant, certain recovery. Accordingly, the request for attorney's fees of $17,220.50 is reasonable.

### 5.      The litigation is complex

Wage-and-hour collective actions are complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). Moreover, if the litigation continues, the parties would still face dispositive motion practice and trial, which would require a detailed analysis of the facts, the law, and damages. Additionally, procedural hurdles may have prevented plaintiff and the FLSA collective member from reaching the merits as a group because they would have been required to prove they were sufficiently "similarly situated" to continue as an FLSA collective. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6.      Counsel's skill on both sides supports approval

The skill and standing of counsel on both sides are substantial. Stokar Law's legal team is qualified, experienced, and has substantial credentials in labor and employment, and class and collective action litigation. Likewise, defendants retained counsel of Dinsmore & Shohl and the primary defense counsel assigned to the matter was a former District Court clerk in the Southern District of Ohio. The lawyers representing the parties are experienced in complex wage-and-hour class litigation. Therefore, this factor supports approval of the requested fee award.

### 7.      The Court should approve litigation expenses

In addition to attorneys' fees, plaintiff's counsel seeks out-of-pocket litigation expenses, which are a modest $441.89 comprised entirely of the filing fee ($402.00), postage related to service of the summons and waiver packet ($23.07), and postage related to the Notice ($16.82).

## V.      CONCLUSION

This settlement is the product of extensive arm's length negotiations between experienced counsel and fairly and reasonably resolves a *bona fide* dispute.  The agreement and requested payments, attorneys' fees and costs satisfy the criteria set forth by the Sixth Circuit.  Plaintiff respectfully requests that this Court enter the Proposed Order (Exhibit C) approving and effectuating the terms of the Agreement.

Respectfully submitted,

STOKAR LAW, LLC

*/s/ Robb S. Stokar*
Robb S. Stokar (0091330)
404 E. 12th St.
First Floor
Cincinnati, OH 45202
T: 513-500-8511
rss@stokarlaw.com
*Counsel for Plaintiff*

Have seen and does not oppose:


*/s/ Jeremy D. Smith\*_____*

Allison L. Goico (OH 0088777)
Jeremy D. Smith (OH 0088539)
Dinsmore & Shohl LLP
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Phone: (513) 977-8200
Facsimile: (513) 977-8141
Email: allison.goico@dinsmore.com
jeremy.smith@dinsmore.com
*Attorneys for Defendants*

*per email auth. (6-27-23) RSS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2023, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

*/s/ Robb S. Stokar*
Robb S. Stokar (0091330)